**Fill in this information to identify the case:**

Debtor 1  Karen T Beltran

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Southern District of New York

Case number  17-22419-rdd

## Official Form 410

# Proof of Claim

12/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:  Identify the Claim

| | | |
|---|---|---|
| 1. Who is the current creditor? | Gustavia Home LLC | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor  SN Servicing Corporation | |

| | | |
|---|---|---|
| 2. Has this claim been acquired from someone else? | ☑ No | |
| | ☐ Yes.  From whom? _____ | |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

SN Servicing Corp
Name

323 5th Street
Number        Street

Eureka            CA        95501
City              State     ZIP Code

Contact phone  800-603-0836

Contact email  bknotices@snsc.com

Where should payments to the creditor be sent? (if different)

SAME
Name

Number        Street

City              State     ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_____

| | | |
|---|---|---|
| 4. Does this claim amend one already filed? | ☑ No | |
| | ☐ Yes.  Claim number on court claims registry (if known) _____ | Filed on ____ / ____ / ____  MM / DD / YYYY |

| | |
|---|---|
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No |
| | ☐ Yes.  Who made the earlier filing? _____ |

**Part 2:   Give Information About the Claim as of the Date the Case Was Filed**

6. Do you have any number you use to identify the debtor?

   ☐ No
   ☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  6  4  3  4

7. How much is the claim?   $_____ . Does this amount include interest or other charges?
   ☐ No
   ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

   Limit disclosing information that is entitled to privacy, such as health care information.

   Money Loaned

9. Is all or part of the claim secured?

   ☐ No
   ☑ Yes.  The claim is secured by a lien on property.

   **Nature of property:**
   ☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
   ☐ Motor vehicle
   ☐ Other. Describe: _____

   Basis for perfection:   Note and Mortgage/60 Truman Avenuen, Yonkers, NY

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   Value of property:                                   $_____
   Amount of the claim that is secured:                 $_____
   Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

   Amount necessary to cure any default as of the date of the petition:   $_____ 195,457.89

   Annual Interest Rate (when case was filed)_____%  9.625%
   ☐ Fixed
   ☑ Variable

   Full Balance claim
   Loan Matures
   4/1/2021

10. Is this claim based on a lease?
    ☑ No
    ☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

11. Is this claim subject to a right of setoff?
    ☑ No
    ☐ Yes. Identify the property: _____

| | |
|---|---|
| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check all that apply:*                 **Amount entitled to priority** |

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).     $_____

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).     $_____

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).     $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).     $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).     $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.     $_____

*  Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

| | |
|---|---|
| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | Check the appropriate box:<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date  5/25/2017<br>          MM / DD / YYYY |

Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Jody   Lee |
| | First name         Middle name        Last name |
| Title | Bankruptcy Asset Manager |
| Company | SN Servicing Corp |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 323 5th Street |
| | Number      Street |
| | Eureka                       CA         95501 |
| | City                        State      ZIP Code |
| Contact phone | 800-603-0836           Email    bknotices@snsc.com |

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 17-22419-rdd | Principal balance: | $114,135.46 | Principal & interest due: | $195,297.89 | Principal & interest: | |
| Debtor 1: | Karen T Beltran | Interest due: | $81,162.43 | Prepetition fees due: | 160.00 | Monthly escrow: | |
| Debtor 2: | | Fees, costs due: | $160.00 | Escrow deficiency for funds advanced: | | Private mortgage insurance: | |
| Last 4 digits to identify: | 6 4 3 4 | Escrow deficiency for funds advanced: | | Projected escrow shortage: | | Total monthly payment: | |
| Creditor: | Gustavia Home LLC | Less total funds on hand: − | | Less funds on hand: − | | | |
| Servicer: | SN Servicing Corporation | Total debt: | $195,457.89 | Total prepetition arrearage: | $195,457.89 *** | | |
| Fixed accrual/daily simple interest/other: | Fixed @ 9.625% | | | ***Full balance claim. Loan matures 4/1/21 *** | | | |

## Part 5: Loan Payment History from First Date of Default

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |

| A Date (Account Activity) | B Contractual PMT AMT | C Funds Received | D Amount Incurred | E Description | F Contractual Due Date | G Prin, Int, Past due balance | How Funds Were Applied/ Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | H Amount to Principal | I Amount to interest | J Amount to escrow | K Amount to fees or charges | L Unapplied Funds | M Principal | N Accrued interest balance | O Escrow Balance | P Fees/charges balance | Q Unapplied funds balance |
| 11/2/09 | $994.49 | | | Service transfer to FCI | 11/1/09 | $ 994.49 | | | | | | | | | | |
| 12/1/09 | $994.49 | | | Payment Due | 11/1/09 | $ 1,988.98 | | | | | | | | | | |
| 1/2/10 | $994.49 | | | Payment Due | 11/1/09 | $ 2,983.47 | | | | | | | | | | |
| 2/1/10 | $994.49 | | | Payment Due | 11/1/09 | $ 3,977.96 | | | | | | | | | | |
| 3/1/10 | $994.49 | | | Payment Due | 11/1/09 | $ 4,972.45 | | | | | | | | | | |
| 4/1/10 | $994.49 | | | Payment Due | 11/1/09 | $ 5,966.94 | | | | | | | | | | |
| 5/1/10 | $994.49 | | | Payment Due | 11/1/09 | $ 6,961.43 | | | | | | | | | | |
| 6/1/10 | $994.49 | | | Payment Due | 11/1/09 | $ 7,955.92 | | | | | | | | | | |
| 7/1/10 | $994.49 | | | Payment Due | 11/1/09 | $ 8,950.41 | | | | | | | | | | |
| 8/1/10 | $994.49 | | | Payment Due | 11/1/09 | $ 9,944.90 | | | | | | | | | | |
| 9/1/10 | $994.49 | | | Payment Due | 11/1/09 | $ 10,939.39 | | | | | | | | | | |
| 10/1/10 | $994.49 | | | Payment Due | 11/1/09 | $ 11,933.88 | | | | | | | | | | |
| 11/1/10 | $994.49 | | | Payment Due | 11/1/09 | $ 12,928.37 | | | | | | | | | | |
| 12/1/10 | $994.49 | | | Payment Due | 11/1/09 | $ 13,922.86 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 1/1/11 | $994.49 | | | Payment Due | 11/1/09 | $ 14,917.35 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 2/1/11 | $994.49 | | | Payment Due | 11/1/09 | $ 15,911.84 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 3/1/11 | $994.49 | | | Payment Due | 11/1/09 | $ 16,906.33 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 4/1/11 | $994.49 | | | Payment Due | 11/1/09 | $ 17,900.82 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 5/1/11 | $994.49 | | | Payment Due | 11/1/09 | $ 18,895.31 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 6/1/11 | $994.49 | | | Payment Due | 11/1/09 | $ 19,889.80 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 7/1/11 | $994.49 | | | Payment Due | 11/1/09 | $ 20,884.29 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 8/1/11 | $994.49 | | | Payment Due | 11/1/09 | $ 21,878.78 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 9/1/11 | $994.49 | | | Payment Due | 11/1/09 | $ 22,873.27 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 10/1/11 | $994.49 | | | Payment Due | 11/1/09 | $ 23,867.76 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 11/1/11 | $994.49 | | | Payment Due | 11/1/09 | $ 24,862.25 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 12/1/11 | $994.49 | | | Payment Due | 11/1/09 | $ 25,856.74 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 1/1/12 | $994.49 | | | Payment Due | 11/1/09 | $ 26,851.23 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 2/1/12 | $994.49 | | | Payment Due | 11/1/09 | $ 27,845.72 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 3/1/12 | $994.49 | | | Payment Due | 11/1/09 | $ 28,840.21 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 4/1/12 | $994.49 | | | Payment Due | 11/1/09 | $ 29,834.70 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 5/1/12 | $994.49 | | | Payment Due | 11/1/09 | $ 30,829.19 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 6/1/12 | $994.49 | | | Payment Due | 11/1/09 | $ 31,823.68 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 7/1/12 | $994.49 | | | Payment Due | 11/1/09 | $ 32,818.17 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 8/1/12 | $994.49 | | | Payment Due | 11/1/09 | $ 33,812.66 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 9/1/12 | $994.49 | | | Payment Due | 11/1/09 | $ 34,807.15 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 10/1/12 | $994.49 | | | Payment Due | 11/1/09 | $ 35,801.64 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |
| 11/1/12 | $994.49 | | | Payment Due | 11/1/09 | $ 36,796.13 | | | | | | $ 114,135.46 | $ - | $ - | $ (16.00) | $ - |

Pg 2 of 4

| Date | Amount | Adj. | Description | Date | Balance | | Amount | | Net |
|---|---|---|---|---|---|---|---|---|---|
| 12/1/12 | $ 994.49 | | Payment Due | 11/1/09 | $ 37,790.62 | | $ 114,135.46 | $ - | $ (16.00) |
| 1/1/13 | $ 994.49 | | Payment Due | 11/1/09 | $ 38,785.11 | | $ 114,135.46 | $ - | $ (16.00) |
| 2/1/13 | $ 994.49 | | Payment Due | 11/1/09 | $ 39,779.60 | | $ 114,135.46 | $ - | $ (16.00) |
| 3/1/13 | $ 994.49 | | Payment Due | 11/1/09 | $ 40,774.09 | | $ 114,135.46 | $ - | $ (16.00) |
| 4/1/13 | $ 994.49 | | Payment Due | 11/1/09 | $ 41,768.58 | | $ 114,135.46 | $ - | $ (16.00) |
| 5/1/13 | $ 994.49 | | Payment Due | 11/1/09 | $ 42,763.07 | | $ 114,135.46 | $ - | $ (16.00) |
| 6/1/13 | $ 994.49 | | Payment Due | 11/1/09 | $ 43,757.56 | | $ 114,135.46 | $ - | $ (16.00) |
| 7/1/13 | $ 994.49 | | Payment Due | 11/1/09 | $ 44,752.05 | | $ 114,135.46 | $ - | $ (16.00) |
| 8/1/13 | $ 994.49 | | Payment Due | 11/1/09 | $ 45,746.54 | | $ 114,135.46 | $ - | $ (16.00) |
| 9/1/13 | $ 994.49 | | Payment Due | 11/1/09 | $ 46,741.03 | | $ 114,135.46 | $ - | $ (16.00) |
| 10/1/13 | $ 994.49 | | Payment Due | 11/1/09 | $ 47,735.52 | | $ 114,135.46 | $ - | $ (16.00) |
| 11/1/13 | $ 994.49 | | Payment Due | 11/1/09 | $ 48,730.01 | | $ 114,135.46 | $ - | $ (16.00) |
| 12/1/13 | $ 994.49 | | Payment Due | 11/1/09 | $ 49,724.50 | | $ 114,135.46 | $ - | $ (16.00) |
| 1/1/14 | $ 994.49 | | Payment Due | 11/1/09 | $ 50,718.99 | | $ 114,135.46 | $ - | $ (16.00) |
| 2/1/14 | $ 994.49 | | Payment Due | 11/1/09 | $ 51,713.48 | | $ 114,135.46 | $ - | $ (16.00) |
| 2/1/14 | $ 994.49 | | Payment Due | 11/1/09 | $ 52,707.97 | | $ 114,135.46 | $ - | $ (16.00) |
| 3/1/14 | $ 994.49 | | Payment Due | 11/1/09 | $ 53,702.46 | | $ 114,135.46 | $ - | $ (16.00) |
| 4/1/14 | | $ (25.00) | Fee assessed | 11/1/09 | $ 53,702.46 | $ (25.00) | $ 114,135.46 | $ - | $ (41.00) |
| 5/1/14 | $ 994.49 | | Payment Due | 11/1/09 | $ 54,696.95 | | $ 114,135.46 | $ - | $ (41.00) |
| 6/1/14 | $ 994.49 | | Payment Due | 11/1/09 | $ 55,691.44 | | $ 114,135.46 | $ - | $ (41.00) |
| 7/1/14 | $ 994.49 | | Payment Due | 11/1/09 | $ 56,685.93 | | $ 114,135.46 | $ - | $ (41.00) |
| 8/1/14 | $ 994.49 | | Payment Due | 11/1/09 | $ 57,680.42 | | $ 114,135.46 | $ - | $ (41.00) |
| 9/1/14 | $ 994.49 | | Payment Due | 11/1/09 | $ 58,674.91 | | $ 114,135.46 | $ - | $ (41.00) |
| 1/1/14 | $ 994.49 | | Payment Due | 11/1/09 | $ 59,669.40 | | $ 114,135.46 | $ - | $ (41.00) |
| 2/1/14 | $ 994.49 | | Payment Due | 11/1/09 | $ 60,663.89 | | $ 114,135.46 | $ - | $ (41.00) |
| 2/1/14 | $ 994.49 | | Payment Due | 11/1/09 | $ 61,658.38 | | $ 114,135.46 | $ - | $ (41.00) |
| 3/1/14 | $ 994.49 | | Payment Due | 11/1/09 | $ 62,652.87 | | $ 114,135.46 | $ - | $ (41.00) |
| 9/1/15 | $ 994.49 | | Payment Due | 11/1/09 | $ 63,647.36 | | $ 114,135.46 | $ - | $ (41.00) |
| 9/1/15 | $ 994.49 | | Payment Due | 11/1/09 | $ 64,641.85 | | $ 114,135.46 | $ - | $ (41.00) |
| 10/1/15 | $ 994.49 | | Payment Due | 11/1/09 | $ 65,636.34 | | $ 114,135.46 | $ - | $ (41.00) |
| 11/1/15 | $ 994.49 | | Payment Due | 11/1/09 | $ 66,630.83 | | $ 114,135.46 | $ - | $ (41.00) |
| 11/1/15 | $ 994.49 | | Payment Due | 11/1/09 | $ 67,625.32 | | $ 114,135.46 | $ - | $ (41.00) |
| 11/1/15 | $ 994.49 | | Payment Due | 11/1/09 | $ 68,619.81 | | $ 114,135.46 | $ - | $ (41.00) |
| 11/1/15 | $ 994.49 | | Payment Due | 11/1/09 | $ 69,614.30 | | $ 114,135.46 | $ - | $ (41.00) |
| 11/1/15 | $ 994.49 | | Payment Due | 11/1/09 | $ 70,608.79 | | $ 114,135.46 | $ - | $ (41.00) |
| 11/1/15 | $ 994.49 | | Payment Due | 11/1/09 | $ 71,603.28 | | $ 114,135.46 | $ - | $ (41.00) |
| 11/1/15 | $ 994.49 | | Payment Due | 11/1/09 | $ 72,597.77 | | $ 114,135.46 | $ - | $ (41.00) |
| 12/9/15 | | $ (125.00) | Legal Fee | 11/1/09 | $ 73,592.26 | $ (125.00) | $ 114,135.46 | $ - | $ (166.00) |
| 12/1/15 | $ 994.49 | | Payment Due | 11/1/09 | $ 74,586.75 | | $ 114,135.46 | $ - | $ (166.00) |
| 2/1/16 | $ 994.49 | | Payment Due | 11/1/09 | $ 75,581.24 | | $ 114,135.46 | $ - | $ (166.00) |
| 3/1/16 | $ 994.49 | | Payment Due | 11/1/09 | $ 76,575.73 | | $ 114,135.46 | $ - | $ (166.00) |
| 4/2/16 | $ 994.49 | | Payment Due | 11/1/09 | $ 77,570.22 | | $ 114,135.46 | $ - | $ (166.00) |
| 4/2/16 | $ 994.49 | | Payment Due | 11/1/09 | $ 78,564.71 | | $ 114,135.46 | $ - | $ (166.00) |
| 5/16/16 | | | Servicing Transfer to SN | 11/1/09 | $ 78,564.71 | | $ 114,135.46 | $ - | $ (166.00) |
| 6/1/16 | $ 994.49 | | Payment Due | 11/1/09 | $ 79,559.20 | | $ 114,135.46 | $ - | $ - |

| Date | Amount | | Transaction Type | Date | Balance | | | |
|---|---|---|---|---|---|---|---|---|
| 7/1/16 | $ 994.49 | | Payment Due | 12/1/09 | $ 80,553.69 | $ 114,135.46 | $ - | $ (166.00) |
| 7/17/16 | | $ (19.89) | Late Charge Assessed | 12/1/09 | $ 80,553.69 | $ 114,135.46 | $ - | $ (182.00) |
| 8/1/16 | $ 994.49 | | Payment Due | 12/1/09 | $ 81,548.18 | $ 114,135.46 | $ - | $ (182.00) |
| 8/17/16 | | $ (19.89) | Late Charge Assessed | 12/1/09 | $ 81,548.18 | $ 114,135.46 | $ - | $ (198.00) |
| 9/1/16 | $ 994.49 | | Payment Due | 12/1/09 | $ 82,542.67 | $ 114,135.46 | $ - | $ (198.00) |
| 9/17/16 | | $ (19.89) | Late Charge Assessed | 12/1/09 | $ 82,542.67 | $ 114,135.46 | $ - | $ (214.00) |
| 10/1/16 | $ 994.49 | | Payment Due | 12/1/09 | $ 83,537.16 | $ 114,135.46 | $ (16.00) | $ (214.00) |
| 10/17/16 | | $ (19.89) | Late Charge Assessed | 12/1/09 | $ 83,537.16 | $ 114,135.46 | $ (16.00) | $ (230.00) |
| 11/1/16 | $ 994.49 | | Payment Due | 12/1/09 | $ 84,531.65 | $ 114,135.46 | $ (16.00) | $ (230.00) |
| 11/17/16 | | $ (19.89) | Late Charge Assessed | 12/1/09 | $ 84,531.65 | $ 114,135.46 | $ (16.00) | $ (246.00) |
| 12/1/16 | $ 994.49 | | Payment Due | 12/1/09 | $ 85,526.14 | $ 114,135.46 | $ (16.00) | $ (246.00) |
| 12/17/16 | | $ 19.89 | Late Charge Assessed | 12/1/09 | $ 85,526.14 | $ 114,135.46 | $ (16.00) | $ (262.00) |
| 1/1/17 | $ 994.49 | | Payment Due | 12/1/09 | $ 86,520.63 | $ 114,135.46 | $ (16.00) | $ (262.00) |
| 1/17/17 | | $ (19.89) | Late Charge Assessed | 12/1/09 | $ 86,520.63 | $ 114,135.46 | $ (16.00) | $ (278.00) |
| 2/1/17 | $ 994.49 | | Payment Due | 12/1/09 | $ 87,515.12 | $ 114,135.46 | $ (16.00) | $ (278.00) |
| 2/17/17 | | $ (19.89) | Late Charge Assessed | 12/1/09 | $ 87,515.12 | $ 114,135.46 | $ (16.00) | $ (294.00) |
| 3/1/17 | $ 994.49 | | Payment Due | 12/1/09 | $ 88,509.61 | $ 114,135.46 | $ (16.00) | $ (294.00) |
| 3/17/17 | | $ (19.89) | Late Charge Assessed | 12/1/09 | $ 88,509.61 | $ 114,135.46 | $ (16.00) | $ (310.00) |
| 3/21/17 | | | Bankruptcy Filed | 12/1/09 | $ 88,509.61 | $ 114,135.46 | $ (16.00) | $ (310.00) |
| 3/21/17 | $ 150.00 | | Legal Fees Waived | 12/1/09 | $ 88,509.61 | $ 114,135.46 | $ 150.00 | $ (160.00) |

Pg 4 of 4



# SERVICING CORPORATION

**323 FIFTH STREET (95501)**
**P.O. BOX 35**
**EUREKA, CA 95502**
**(800) 603-0836**

May 22, 2017

KAREN BELTRAN
60 TRUMAN AVE
YONKERS, NY 10703
Your Reference:

Re:        6434
      KAREN BELTRAN
      60 TRUMAN AVENUE
      YONKERS, NY 10703

Pay off figures for the above referenced loan/borrower are:

| | |
|---|---|
| Projected Payoff Date | 03/21/2017 |
| Principal Balance | $114,135.46 |
| Interest to 03/21/2017 | $81,162.43 |
| Other (See Attached Detail) | $ 160.00 |
| Prepayment Penalty | $0.00 |
| Funds owed by Borrower | $0.00 |
| Funds owed to Borrower | $0.00 |
| Total Payoff | $195,457.89 |
| Per diem | $ 30.10 |

The next payment due is 12/01/2009. The current interest rate is   9.625   % and the P&I payment is $ 994.49.

## PAY OFF INSTRUCTIONS/INFORMATION:

- Pay off figures are subject to change so please call 800-603-0836 to update these figures prior to remitting funds.
- Funds received after 12:00 noon will be processed on the next business day and interest will be charged through that date.
- All pay off figures are subject to clearance of funds in transit. The pay off is subject to final audit when presented.
- Please provide the borrower's forwarding address so any overpayment or refund can be directly mailed to the borrower.
- We will prepare the release of our interest in the property after all funds have cleared.



# SN Servicing Corporation

### PAYOFF DETAIL

.6434

| DESCRIPTION OF OTHER | | |
|---|---|---|
| LATE CHARGES | | $144.00 |
| ATTORNEYS FEES | | $0.00 |
| FORECLOSURE EXPENSES | | $0.00 |
| LEGAL EXPENSES | | $0.00 |
| LEGAL BILLING | | $0.00 |
| INVESTOR PAID EXPENSES | | $0.00 |
| INVESTOR PAID EXPENSES | | $0.00 |
| FORCE PLACE INSURANCE | | $0.00 |
| FORCE PLACE FLOOD | | $0.00 |
| PRIOR SERVICER ESCROW ADV | | $0.00 |
| PRIOR SERVICER ESCROW ADV | | $0.00 |
| PRIOR SERVICER LATE FEES | | $16.00 |
| 3RD PARTY PRIOR SERVICER CORPORATE ADVANCE | | $0.00 |
| PRIOR SERVICER CORPORATE ADVANCE | | $0.00 |
| PRIOR SERVICER CORPORATE ADVANCE | | $0.00 |
| FORBEARANCE PRINCIPAL | | $0.00 |
| FORBEARANCE INTEREST | | $0.00 |
| FORBEARANCE LATE | | $0.00 |
| FORBEARANCE OTHER | | $0.00 |
| FORBEARANCE FORECLOSURE EXPENSES | | $0.00 |
| FORBEARANCE LEGAL FEES | | $0.00 |
| FORBEARANCE LEGAL EXPENSES | | $0.00 |
| FORBEARANCE ESCROW | | $0.00 |
| FORBEARANCE FORCE PLACE INSURANCE | | $0.00 |
| FORBEARANCE FLOOD INSURANCE | | $0.00 |
| PROPERTY TAXES CURRENT | | $0.00 |
| PROPERTY TAXES DELINQUENT | | $0.00 |
| TAXES | | $0.00 |
| INSURANCE FIRE & CASUALTY | | $0.00 |
| NSF FEES | | $0.00 |
| PAYMENT SHORTAGE | | $0.00 |
| APPRAISAL / BPO | | $0.00 |
| PROPERTY INSPECTIONS | | $0.00 |
| VERIFICATION OF MORTGAGE | | $0.00 |
| ELECTRONIC PAYMENT FEES | | $0.00 |
| UTILITIES | | $0.00 |
| PRIOR RUSH | | $0.00 |
| PRIOR PAYOFF PROCESSING FEES | | $0.00 |
| DEFERRED PRINCIPAL | | $0.00 |
| | $160.00 | TOTAL |

### FUNDS OWED FROM BORROWER

| | DESCRIPTION | AMOUNT |
|---|---|---|
| ASSISTANCE ADVANCE | Taxes | $0.00 |
| ASSISTANCE ADVANCE | | $0.00 |
| ASSISTANCE ADVANCE | | $0.00 |
| ESCROW ADVANCE | Short Payment | $0.00 |
| ESCROW ADVANCE | Taxes, Insurance, PMI | $0.00 |
| | $0.00 | TOTAL |

### FUNDS OWED TO BORROWER

| | DESCRIPTION | AMOUNT |
|---|---|---|
| UNAPPLIED | Borrower's Funds | $0.00 |
| UNAPPLIED | | $0.00 |
| ESCROW | | $0.00 |
| INTEREST ON ESCROW | | $0.00 |
| OTHER FUNDS | | $0.00 |
| INTEREST ON LOSS DRAFT | | $0.00 |
| LOSS DRAFT | | $0.00 |
| | $0.00 | TOTAL |

National City ®

**NOTE AND SECURITY AGREEMENT**

(Not to be Used for Texas Homestead Loans Unless Proceeds Used Only for Purchase Money or Refinance of Purchase Money)

National City Complete Loan is a registered trademark of National City Corporation.

Date: March 30, 2006

**1.  DEBTOR (S):** KAREN BELTRAN

**Address:**  80 TRUMAN AVE
YONKERS, NY 10703

**2.  DEFINITIONS AND GENERAL TERMS.** "You" or "your" means the undersigned Debtors. "We", "our" or "us" means FIRST FRANKLIN, A DIVISION OF NAT. CITY BANK OF IN, 2150 NORTH FIRST STREET, SAN JOSE, California 95131 and its successors and assigns. "Note" means this promissory note and security agreement and all related attachments and addenda. "Loan" means the loan evidenced by this Note. "Property" means the real estate securing the payment of this Note described in Section 4. "Disclosure Statement" means the separate federal truth-in-lending disclosure statement of even date provided to you, the terms of which are incorporated by reference in this Note. Disclosures in the Disclosure Statement are contract terms. You agree that we are making this Loan directly to you. The Section headings of this Note are a table of contents and not contract terms.

**3.  PROMISSORY NOTE.** For value received, you, intending to be legally bound, jointly and severally promise to pay to our order the principal sum of $ 117,000.00     , which includes a prepaid finance charge of $ 667.58     , plus interest on the principal sum outstanding and other sums owed under this Note until paid in full at the per annum rate of 9.0250 %. You will make a monthly payment in the amount of U.S.$1094.49     on the    1st    day of each month beginning on    May  1, 2006    . If on    April  1, 2021    , you still owe amounts under this Note, you will pay those amounts in full on that date. You agree that all past due and unpaid charges owed, including past due interest, may be capitalized and earn interest by adding such charges to the principal balance of this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. You will mail your monthly payments to: National City Home Loan Services, 150 Allegheny Center Mall, Pittsburgh, PA  15212, or such other place as we may specify. If you are making a payment by an overnight delivery service only, you will send it to National City, 6101 Interchange Way, Louisville, KY 40229 or such other place as we may specify.

**4.  PROPERTY:**  00 TRUMAN AVE
YONKERS, NY 10703

**5.  DISBURSEMENT OF PROCEEDS.** You authorize us to disburse all proceeds of this Loan by check, draft, electronic transfer or in such other form or manner as we choose in our sole discretion.

**6.  LATE CHARGE; RETURNED INSTRUMENT CHARGE; DEFERRAL CHARGE; SERVICE CHARGES.** If all or any portion of any monthly payment is not received within 10 days after it is due and we do not accelerate the entire balance owing under this Note, you agree to pay a late charge. This late charge will be $10.00. If any check, draft, negotiable order of withdrawal, or other similar instrument is returned to us unpaid for any reason, you agree to pay a returned instrument charge of $20. If we, in our sole discretion, permit you to defer any payment(s) you agree to pay a deferral charge for each payment deferred. We will continue to earn interest on the unpaid principal balance. If you request copies of any documents related to this Loan, you agree to pay a document request charge for the service of providing copies. This document request charge will be 10 per copy. We will not charge you for documents we are required to provide you by law. You agree that we may also charge you a fee, not otherwise enumerated herein, for services that we perform for you that you have requested.

**7.  INSURANCE.** You are required to insure the Property until this Loan is paid in full or we sell the Property. You have the risk of loss of the Property and shall be responsible for its loss or damage. You will notify us promptly of any loss or damage to the Property. You agree to obtain primary insurance coverage (including furnishing existing coverage) from any insurer you want that is acceptable to us provided that the insurer is authorized to do business in the state or jurisdiction where the Property is located or in an eligible surplus lines carrier, in the following types and amounts with us listed as loss payee: (a) fire, "all risk" perils and flood insurance required by law; and (b) all other insurance required by applicable law. You must keep the Property fully insured against loss or damage on terms which are acceptable to us to the extent permitted by law. All insurance proceeds we receive (including a refund of premiums) may at our option reduce the indebtedness of this Note or be used to repair or replace the Property. If the Property is destroyed, you must still pay us whatever you owe under this Note. If you fail to maintain the required insurance, we may at our sole option obtain coverages at your expense that we believe are necessary to protect our interests in the Property. You agree to pay the expense of such insurance on demand or agree that we may add such expense to this Loan. You acknowledge that insurance we purchase may cost substantially more than insurance you could purchase. Failure of your insurer to pay a claim, or any part of a claim, will mean you do not have the insurance required by this Note. You also assign to us any other insurance proceeds related to the Note or our interest in the Property. You must promptly provide us with evidence of insurance and proof of payment of insurance premiums upon our request, and all policies must provide us with a minimum of 10 days prior notice of cancellation or material change in coverage. You irrevocably authorize us as your agent and on your behalf, which authorization will survive your incompetence, to negotiate, settle and release any claim under your insurance or under any insurance with a third party insurer related to the Property, and to receive and sign all related papers and documents on your behalf including, checks, drafts and other items payable to you.

**8.  PREPAYMENT.** You may voluntarily prepay the principal sum of this Note in part at any time. If you voluntarily prepay the principal sum of this Note in full within the first    12    months of this Note, you agree to pay a voluntary prepayment charge. This voluntary prepayment charge will be equal to    2% of the principal balance at the time of prepayment. The prepayment charge will apply to amounts prepaid within 60 days of prepayment in full, after deducting any required refund. Unless refund of all or a portion of the prepaid finance charge is required by law, no portion of the prepaid finance charge described in Section 3 will be refunded. Subject to Section 3, you authorize us to apply all prepaid sums to the indebtedness of this Note in any manner we elect.

**9.  SECURITY AGREEMENT.** To the extent permitted by law, you grant us a security interest and waive all applicable property exemptions and homestead rights (unless the Property is located in Texas) in the following property to secure performance of your obligations under this Note: (a) the Property including all equipment, parts, accessories and personal property which is a fixture of the Property except "household goods" as defined by 12 C.F.R. 227.12(d) unless purchased with the proceeds of this Loan. If we have a prior lien on your principal residence as security for future obligations, we waive such security as to this Note only; (b) proceeds and unearned premiums of any Property insurance; and (c) the substitutions, replacements, products and proceeds of the foregoing. Our security interest will be a purchase money security interest if any of the foregoing are purchased with the proceeds of this Loan. You agree that we are not a fiduciary with respect to our security interest. You further agree that we may at any time apply proceeds and unearned premiums and refunds of any Property insurance to reduce the indebtedness of this Note, even if you are not in default. Upon our request, you will deliver any documents that are necessary for us to perfect our security interest or, if applicable, follow our instructions to perfect our security interest in the Property. You will defend at your expense our security interest in the Property. To the extent permitted by law, you agree to pay all actual costs imposed to release our interest in the Property.

**10.  PROPERTY MAINTENANCE AND USE.** You will promptly pay all fees, fines, and taxes related to this Loan and the Property. You will maintain the Property in good condition except for ordinary wear and tear, and keep it free from all liens, encumbrances, fines and adverse claims except for those permitted by us in writing. You will make all needed repairs. You will not make any changes to the Property that will decrease its value or decrease its functionality without our prior written consent. You will permit us to inspect the Property at a time which is reasonably convenient. If you do not do any of the foregoing, we may do so at our sole option and add the costs to this Loan unless you require you to provide us with additional collateral. You will not use, or permit others to use, the Property: (a) in violation of any law; (b) contrary to the provisions of any insurance policies covering the Property or in a manner that would invalidate any warranty or (c) for any business, commercial or agricultural purpose unless this Loan is explicitly for such a purpose.

Page 1 of 4

11.   **DEFAULT AND REMEDIES.** You will be in default under this Note if: (a) you fail to make any payment or pay other amounts owing under this Note when due; (b) you fail to keep any of your agreements under this Note or under any other agreement with us; (c) a bankruptcy petition is filed by or against you; (d) you have provided false or misleading information to us; (e) you die or are declared incompetent or incapacitated; (f) the Property is destroyed, determined by us to be unfinanceable for use, seized, impounded or threatened with, or subject to, levy, attachment, condemnation, forfeiture or other administrative or judicial proceedings; or (g) you are in default on any obligation that is secured by a lien on the Property. If you are in default, in addition to any other rights and remedies we have under law and subject to any right you may have to cure your default, we may do any of the following: (aa) accelerate the entire balance owing under this Note after any demand or notice which is required by law, which entire balance will be immediately due and payable. If you are in default, prior to our obtaining a judgment against you, any amounts owing under this Note will continue to bear interest at the interest rate stated in this Note. If we obtain a judgment against you for any amounts owing under this Note, the amount of such judgment will bear interest at the rate permitted by Indiana law for judgments from the date of judgment; (bb) demand that you vacate the Property and make it available to us at a time that is reasonably convenient. You agree to comply with such demand; (cc) sell, lease, or otherwise dispose of the Property without prior demand, unless otherwise required by law. Our disposal of the Property will not release you from any of your obligations and you will pay us any balance owing under this Note; and (dd) recover all expenses related to retaking, holding, preparing for sale and selling the Property and reasonable collection costs, attorneys' fees (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you) and legal expenses as permitted by 11 U.S.C. 506 and applicable state law.

12.   **PROPERTY CONDITION.** You agree that with respect to any Property: (a) it is free from all material defects, in proper operating order and in for all intended purposes; (b) that our making this Loan was based in part upon the value and condition of the Property as represented by you; (c) we did not directly or indirectly offer, sell or provide it to you; and (d) we are not a seller, supplier, merchant or warrantor. Accordingly, except for specific rights afforded by state law, any claims relating to the Property, including any defect or warranty related to it, are not our responsibility.

13.   **ADDITIONAL AGREEMENTS.** You agree that: (a) you may not sell or assign this Note, the Property or any of its benefits or obligations without our prior written consent. We own this Note and may assign this Note or any of its benefits or obligations at any time without your consent; (b) this Note is between you and us and, except for successors or assigns as provided by this Note, this Note will not confer any rights upon any third party; (c) our rights and remedies in this Note are not exclusive; (d) we may waive or delay the enforcement of our rights under this Note without waiving or otherwise affecting such rights; (e) the provisions of this Note are only to the extent permitted by applicable law. Any part of this Note that cannot be enforced will be void, but the remaining parts will remain in effect (f) you waive notice of dishonor, protest, presentment, demand for payment (subject to any right you may have to cure your default), waiver, delay and all other notices or demands in connection with this Note; (g) you waive all defenses relating to impairment of recourse or collateral, and we can change any term of this Note, release any collateral or release any obligor by agreeing with any one party without notifying or releasing any other party; (h) we can correct errors in this Note as provided in 15 U.S.C. Section 1640 upon notice to you even if such errors are contract terms and you agree to be bound by such corrections. Upon our request, you will promptly re-execute this Note to correct errors in the Note. You can change any term of this Note only in a writing signed by us; (i) the Bank is a national bank located in Indiana and your application for this Loan and the making of this Loan occurred in Indiana. Therefore, this Note shall be governed by and construed in accordance with (y) Federal laws and regulations including but not limited to 12 USC Section 85 and (z) the laws of Indiana, to the extent Indiana laws are not preempted by federal laws or regulations, and without regard to conflict of law principles; (j) this Note describes all agreements between you and us with respect to the Loan and there are no other agreements. An electronic or optically imaged reproduction of this Note or any other document related to your Loan constitutes an original document and may be relied on in full by all parties to the same extent as an original; (k) except as otherwise required by law, we are authorized to mail any notice or other correspondence to you by first class mail to your last known address indicated on our records; (l) you will provide us with 10 days prior written notice of any change in any information contained in your application including a change in your name or address. Except as otherwise specified, all notices and payments to us must be sent to National City, 150 Allegheny Center Mall, Pittsburgh, PA  15212 Attn: Customer Service, Locator 47-23-551, or such other place as we may designate. Our failure or delay in providing you coupon books, billing statements or other payment instructions will not relieve you of your obligations under this Note; (m) all payments must be in lawful money of the United States; (n) if you are a natural person you are competent to enter into this Note and if you are other than a natural person, the person signing on behalf of you represents that he is authorized to enter into and execute this Note; (o) we will not be responsible for any personal items in or on vacated Property. We will make a reasonable effort to return such items to you or have you reclaim them from us provided you notify us within 5 business days of our taking repossession and reclaim such items. Even if you notify us, you abandon to us any personal items not reclaimed from us within 10 business days of our taking repossession; (p) we may accept late payments or partial payments without losing any of our rights if your payment is marked with the words "Paid in Full" or similar language, you must send your payment to National City, 150 Allegheny Center Mall, Pittsburgh, PA  15212 Attn: Customer Service, Locator 47-23-551 or such other place as we may designate. If your payment is made to any other address, we may accept the payment without losing any of our rights; (q) our application of your payments or other proceeds is reasonable unless another method is required by law, in which case that method shall be reasonable; (r) this Note will be binding and inure to the benefit of you and us and our respective successors and assigns; (s) except as otherwise prohibited by law, Bank may provide to others, including, but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you. Also, Bank and its affiliates (collectively "National City") may share with each other all information about you that National City has or may obtain for the purposes, among other things, of evaluating credit applications or offering you products or services that National City believes may be of interest to you. Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention: Office of Consumer Privacy, P.O. Box 4008, Kalamazoo, MI  49009. You must include your name, address, account number and social security number; (t) if this Loan is not for a consumer purpose or you are not a natural person, you are not entitled to any rights afforded consumers under applicable law or regulations; (u) all actions under this Note requiring our consent are at our sole discretion, and such consent may be withheld for any reason; (v) the annual IRS Form 1098 will be issued only to the first borrower listed on this Note at origination and the designation of a borrower as first cannot be changed subsequently; (w) our typewritten name in Section 2 will constitute our signature for purposes of this Note; (x) we have an established business relationship with you, and unless otherwise prohibited by law, National City may contact you to offer you products and services that National City thinks may be of interest to you. Such contacts are not unsolicited and National City may contact you with an automated dialing and announcing device or by fax, email or other form of electronic communication and we may monitor telephone calls with you to assure quality service; (y) all amounts owed under this Note shall be without relief from valuation and appraisement laws (z) we are authorized to sign on your behalf any document required to enforce our interests under this Note; (aa) provisions included in this Note that are not required by law are not an admission or waiver of rights by us; (bb) you will pay all fees we charge you in connection with this Loan including those indicated on any Good Faith Estimate or HUD1/HUD1A provided in connection with this Loan, which will be nonrefundable to the extent permitted by law; and (cc) in this Note, the term "affiliates" means current and future affiliates of National City Bank of Indiana, including, but not limited to, the following National City Corporation subsidiaries: National City Bank, National City Bank of Michigan/Illinois, National City Bank of Pennsylvania, National City Bank of Southern Indiana, National City Home Loan Services, Inc., First Franklin Financial Corporation, National City Bank of Kentucky, Madison Bank and Trust Company, National City Mortgage Co. and National City Mortgage Services Co.

14.   **ADDITIONAL NOTICES.** The following notices are given by Bank only to the extent not inconsistent with 12 U.S.C. Section 85 and related regulations and opinions, and/or the choice of law provision set forth herein (with respect to which Bank expressly reserves all rights). You acknowledge receipt of the following notices before becoming obligated. For purposes of the immediately following *Notice to Cosigner*, "bank" means us.

## NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The bank can collect this debt from you without first trying to collect from the borrower (and after proper notice to you if you are a "cosigner" as defined by Illinois or Michigan law). The bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages (unless you receive wages in North Carolina, Pennsylvania, South Carolina or Texas) etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

## NOTICE TO ALL SIGNERS

You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a consumer (credit) reporting agency if you fail to fulfill the terms of your credit obligations. If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, 150 Allegheny Center Mall, Pittsburgh, PA 15212 Att'n: Customer Service, Locator 47-23-551 or such other place as we may designate.

## OTHER NOTICES

If the Property is located in California: Lender, may at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property.

If the Property is located in Colorado: The dollar amount of the finance charge disclosed to you for this credit transaction is based upon your payments being received by us on the date payments are due. If your payments are received after the due date, even if received before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of principal. This is due to the accrual of daily interest until a payment is received.

If the Property is located in Florida: FLORIDA DOCUMENTARY STAMP TAX IN THE AMOUNT REQUIRED BY LAW HAS BEEN PAID OR WILL BE PAID DIRECTLY TO THE DEPARTMENT OF REVENUE, AND FLORIDA DOCUMENTARY STAMPS HAVE BEEN PLACED ON THE TAXABLE INSTRUMENTS AS REQUIRED BY CHAPTER 201, FLORIDA STATUTES.

If the Property is located in Iowa (this is a consumer credit transaction) or Kansas: NOTICE TO CONSUMER: 1. Do not sign this paper (agreement) before you read it. 2. You are entitled to a copy of this paper (agreement). 3. You may prepay the unpaid balance at any time and may be entitled to receive a refund of unearned charges in accordance with law. 4. If you prepay the unpaid balance, you may have to pay a prepayment penalty.

If the Property is located in Iowa and the principal amount of this Loan exceeds $20,000: IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

If the Property is located in Maryland: We elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland.

If the Property is located in Minnesota: If the amount of this Loan is $100,000 or more, we elect Minn. Stat. § 334.01.

If the Property is located in Missouri: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

If the Property is located in New York: YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

If the Property is located in North Dakota: THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

If the Property is located in Oregon: NOTICE TO THE BORROWER: Do not sign this loan agreement before you read it. The loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

If the Property is located in Texas: THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

If the Property is located in Vermont: NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

If you reside in Wisconsin: NOTICE TO CUSTOMER: (a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED. (b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

15.    SIGNATURES. YOU HAVE READ AND AGREE TO ALL PROVISIONS OF THIS NOTE INCLUDING THOSE ON PAGES 1 THROUGH 3 AND IN THE DISCLOSURE STATEMENT WHICH ARE INCORPORATED HEREIN BY REFERENCE. (1) DO NOT SIGN THIS NOTE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS NOTE BEFORE YOU SIGN IT. BY SIGNING THIS NOTE, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND HAD AN OPPORTUNITY TO REVIEW A COMPLETED COPY OF THIS ENTIRE NOTE BEFORE SIGNING IT ON THE DATE SHOWN ON PAGE 1. SEE PAGES 1, 2 AND 3 AND THE DISCLOSURE STATEMENT FOR ADDITIONAL IMPORTANT TERMS AND CONDITIONS.

Debtor:    KAREN BELTRAN                              X_____
           _____               Debtor's signature
           Type or print name of Debtor

Debtor:    _____          X_____
           Type or print name of Debtor                  Debtor's signature

Debtor:    _____          X_____
           Type or print name of Debtor                  Debtor's signature

Debtor:    _____          X_____
           Type or print name of Debtor                  Debtor's signature

Debtor:    _____          X_____
           Type or print name of Debtor                  Debtor's signature

Debtor:    _____          X_____
           Type or print name of Debtor                  Debtor's signature

FOR MICHIGAN GUARANTORS ONLY: Guaranty Agreement. For value received, you, the undersigned guarantors, jointly, severally and unconditionally guarantee the payment of all sums owing under this Note when due and the performance by the Debtors of all promises contained in this Note. Upon default, we may proceed against any of you without first proceeding against any Debtor. The liability of each of you will be primary and will not be affected by any settlement, release, extension, renewal or modification of this Note whether or not by operation of law. Each of you voluntarily and knowingly waives all rights to any demands, presentments, notices and defenses of any kind or nature you might have in connection with this Guaranty. Each of you agrees to pay all expenses including reasonable attorneys' fees incurred by us if we have to enforce this Guaranty. Each of you acknowledges that you have read and agree to all terms of this Guaranty, Note and Disclosure Statement prior to signing below.

Guarantor:  _____          X_____
            Type or print name of Guarantor               Guarantor's signature

Guarantor:  _____          X_____
            Type or print name of Guarantor               Guarantor's signature

FOR LOUISIANA PROPERTIES ONLY:

"NE VARIETUR" for identification with an Act of Mortgage passed before me this _____ day of _____

Pay To The Order Of
First Franklin Financial Corporation
Without Recourse
First Franklin, A Division of National City Bank of Indiana
By _____
Tanya Rodriguez, Closer

Pay To The Order Of
Without Recourse
First Franklin Financial Corporation
By _____
Tanya Rodriguez, Funder

_____
Notary Public:
Notary Identification Number

* 2004 National City Corporation

Page 4 of 4

## ADDENDUM TO PROMISSORY NOTE AND SECURITY AGREEMENT
### (New York Balloon Loan Disclosures)

This Addendum to Promissory Note and Security Agreement ("Addendum") supplements and is incorporated by reference into that certain Promissory Note and Security Agreement ("Contract") of even date between you and us. Terms shall have the meanings described in the Note.

Please read the following carefully:

[X]  If this box is checked, we will not guarantee refinancing of the loan for additional terms until the principal balance has been repaid. Accordingly:

THE TERM OF THE LOAN IS _15_ YEARS. AS A RESULT, YOU WILL BE REQUIRED TO REPAY THE ENTIRE PRINCIPAL BALANCE AND ANY ACCRUED INTEREST THEN OWING _15_ YEARS FROM THE DATE ON WHICH THE LOAN IS MADE.

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

The principal amount of your loan which will be due at maturity of the loan or the initial term of the loan (assuming all scheduled principal payments, if any , are made in accordance with the loan contract) will be $ 95,546.45

At least 90 but not more than 120 days before the maturity date of the balloon payment for your loan, you will receive notice of the maturity date.

[ ]  If this box is checked, we will guarantee refinancing of the loan for additional terms until the principal balance has been repaid but we do not provide for the recalculation of the interest rate at the time of each refinancing according to a prespecified index. Accordingly:

THE TERM OF THE LOAN IS _____ YEARS. AT MATURITY, _____ YEARS FROM THE DATE ON WHICH THE LOAN IS MADE, AND AT TIME OF EACH FURTHER REFINANCING, THE LOAN WILL BE REFINANCED AT AN INTEREST RATE ESTABLISHED BY THE LENDER WITH REFERENCE TO MARKET RATES. SUCH INTEREST RATE(S) MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.

The principal amount of your loan which will be due at maturity of the loan or the initial term of the loan (assuming all scheduled principal payments, if any, are made in accordance with the loan contract) will be $

At least 90 but not more than 120 days before the maturity date of the balloon payment for your loan, you will receive notice of the maturity date.

Borrowers/Debtors acknowledges receipt with all applicable blanks filled in.


_K Bell__ 3-30-06___          _____
KAREN BELTRAN      Date                        Date


_____          _____
                   Date                        Date


_____          _____
                   Date                        Date




National City ®

## BALLOON NOTE ADDENDUM TO NOTE AND SECURITY AGREEMENT – FIRST FRANKLIN

Date: March 30, 2006

**1. DEBTOR (S):    KAREN BELTRAN**

**Property Address:** 60 TRUMAN AVE
                     YONKERS, NY  10703

**2.  DEFINED TERMS; ADDENDUM A PART OF THE NOTE.**  "Addendum" means this Balloon Note Addendum to Note and Security Agreement which is attached to, made a part of and amends and supplements the Note and Security Agreement ("Note") dated the same date as this Addendum. The terms "we" and "us" include our successors and assigns. In the event there are any conflicts between this Addendum and the Note, the provisions of the Addendum will control. Unless specifically defined in this Addendum, any capitalized terms shall have the same meaning as in the Note.

**3.  BALLOON NOTE.**  The final payment due under the Note is larger than the previous monthly payments.  The final payment includes a substantial payment of principal.  This Note is commonly called a "balloon note."

**4. BALLOON NOTE AGREEMENT.**  You understand and agree as follows:

THIS LOAN IS PAYABLE IN FULL ON THE FINAL PAYMENT DATE SET FORTH IN THE PAYMENT SCHEDULE IN THE DISCLOSURE STATEMENT.  YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN, UNPAID INTEREST AND OTHER SUMS THEN DUE.

**5.  SIGNATURES.**  YOU HAVE READ AND AGREE TO ALL PROVISIONS OF THIS ADDENDUM AND AGREE THAT ALL NOTICES IN SECTION 15 OF THE NOTE ARE INCORPORATED HEREIN BY REFERENCE. (1) DO NOT SIGN THIS ADDENDUM BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN.  (2) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS ADDENDUM BEFORE YOU SIGN IT.  BY SIGNING THIS ADDENDUM, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND HAD AN OPPORTUNITY TO REVIEW A COMPLETED COPY OF THE ENTIRE NOTE INCLUDING THIS ADDENDUM BEFORE SIGNING.

Debtor:  <u>KAREN BELTRAN</u>                    X _____
         Type or print name of Debtor              Debtor's signature

Debtor:  _____            X _____
         Type or print name of Debtor              Debtor's signature

Debtor:  _____            X _____
         Type or print name of Debtor              Debtor's signature

Debtor:  _____            X _____
         Type or print name of Debtor              Debtor's signature

Debtor:  _____            X _____
         Type or print name of Debtor              Debtor's signature

Debtor:  _____            X _____
         Type or print name of Debtor              Debtor's signature

© 2004 National City Corporation



| Control Number | Instrument Type |
|---|---|
| 461520358 | MTG |

 **WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE**
**(THIS PAGE FORMS PART OF THE INSTRUMENT)**
**\*\*\* DO NOT REMOVE \*\*\***

THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:
TYPE OF INSTRUMENT: <u>MTG - MORTGAGE</u>
FEE PAGES:  21         TOTAL PAGES:  21

| RECORDING FEES | | MORTGAGE TAXES | |
|---|---|---|---|
| STATUTORY CHARGE | $6.00 | MORTGAGE DATE | 3/30/2006 |
| RECORDING CHARGE | $63.00 | MORTGAGE AMOUNT | $117,000.00 |
| RECORD MGT. FUND | $19.00 | EXEMPT | Yes |
| RP 5217 | $0.00 | | |
| TP-584 | $0.00 | COUNTY TAX | $292.50 |
| CROSS REFERENCE | $0.00 | YONKERS TAX | $585.00 |
| MISCELLANEOUS | $0.00 | BASIC | $585.00 |
| | | ADDITIONAL | $321.00 |
| TOTAL FEES PAID | $88.00 | MTA | $292.50 |
| | | SPECIAL | $0.00 |

| TRANSFER TAXES | |
|---|---|
| CONSIDERATION | $0.00 |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

TOTAL PAID                    $2,076.00

RECORDING DATE: 6/9/2006
TIME: 13:29:00

SERIAL NUMBER: CX12127
DWELLING: 1-2 Family

THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:
CITY OF YONKERS

WITNESS MY HAND AND OFFICIAL SEAL

*Timothy C. Idoni*

TIMOTHY C. IDONI
WESTCHESTER COUNTY CLERK

Record & Return to:
FIRST FRANKLIN
1935 INTERNATIONAL WAY

IDAHO FALLS, ID 83402

# WESTCHESTER COUNTY CLERK RECORDING SHEET

110 Dr. Martin Luther King, Jr. Boulevard          White Plains, NY 10601

-------- THIS FORM MUST BE COMPLETED AND SUBMITTED WITH EACH DOCUMENT --------

This page is part of the Instrument; the County Clerk will rely on the information
provided on this page for purposes of indexing this document.
To the best of the submitter's knowledge the information contained on this
Recording Sheet is consistent with the information contained in the attached document.

**SUBMITTER INFORMATION:**                                    Title Number: *84100669*

Company:  STATEWIDE ABSTRACT CORP.

Address:  202 MAMARONECK AVENUE

City  WHITE PLAINS         State:  NY      Zip:  10601      Telephone: (914) 683-5900

Attention:  RECORDING DEPARTMENT

| Document type: *Mortgage* | # of pages: *19* | Mortgage Amount  On page *2* of document  $ *117,000*  OR | Dwelling Type:  For Mortgage Only  On page *13* of document  [X] 1 to 2 family  [ ] 1 to 6 family  [ ] Not 1 to 6 family |
|---|---|---|---|

**1st party name(s) (i.e. grantor/mortgagor)**      Business Entity
On page *1* of document

*Karen Beltran*                                        [ ]

_____                                [ ]

_____                                [ ]

_____                                [ ]

_____                                [ ]

Consideration/Conveyance Amt:
$ _____

Check if submitted:
[ ] RP-5217 - [ ] $75 [ ] $165
[ ] TP-584 - Type of property conveyed (1 through 8) ____
[ ] TP-584.1          [ ] IT-2663

**2nd party name(s) (i.e. grantee/mortgagee)**      Business Entity
On page *1* of document

*1st Franklin a Division*  [X]

*of Nat'l.*                                             [ ]

_____                                [ ]

_____                                [ ]

**TAXES PAID:**                                Reference # Or Check #

Mortgage Tax   $ *2076.00*     _____

Transfer Tax   $ _____    _____

Mansion Tax    $ _____    _____

**RECORDING FEES PAID:**        Amount        Reference # or Check #

$ _____

**Tax designation  (Section, Block & Lot)**
*3 / 337B / 56*    On page *1* of document

**MORTGAGE TAX AFFIDAVITS SUBMITTED:**
[ ] 252  [ ] 255  [ ] 280  Other: _____
[ ] 253  [ ] 260  [ ] 339-ee

**City(ies) or Town(s) for Property Description**
*Yonkers*    On page *4* of document

Cross Reference(s): ____    On page ____ of document

**Property Description -- If required, check the one contained within the document.**
[X] Metes & bounds        On page *4* of document
[ ] Lot number on map filed in the Office of the County Clerk
[ ] Refer to deed recorded in the Office of the County Clerk

**Record and Return To:**
*1st Franklin*
*c/o Secering Connections*
*1935 International Way*
*Idaho Falls, ID 83402*

LandRecords/Coversheet.doc    revised 06/30/05

After Recording Return To:

FIRST FRANKLIN
c/o SECURITY CONNECTIONS
1935 INTERNATIONAL WAY
IDAHO FALLS, ID  83402

———————————————————— [Space Above This Line For Recording Data] ————————————————————

# MORTGAGE
## (Secondary Lien)

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

WORDS USED OFTEN IN THIS DOCUMENT

(A)  "Security Instrument." This document, which is dated            March 30, 2006            , together with all Riders to this document, will be called the "Security Instrument."

(B)  "Borrower." KAREN BELTRAN

whose address is 58 Caroline Avenue, Yonkers, NY  10705

sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D)  "Lender." FIRST FRANKLIN  A DIVISION OF NAT. CITY BANK OF IN

will be called "Lender." Lender is a corporation or association, which exists under the laws of United States of America . Lender's address is 2150 NORTH FIRST STREET, SAN JOSE, California  95131

NEW YORK MORTGAGE—Single Family—Secondary Lien
THE COMPLIANCE SOURCE, INC. ©
ITEM 8497L1 (0304)—MERS ]                    *(Page 1 of 13 pages)*                    To Order Call 1-800-968-5775

(E)  "Note." The note signed by Borrower and dated          March 30, 2006     ,          , will be called the "Note."
The Note shows that I owe Lender One Hundred Seventeen Thousand and no/100
                                        Dollars (U.S. $ 117,000.00                     ) plus interest
and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by
April 01, 2021          .

(F)  "Property." The property that is described below in the section titled "Description of the Property," will be called the
"Property."

(G)  "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.

(H)  "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the
Property" sometimes will be called the "Sums Secured."

(I)  "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The
following Riders are to be signed by Borrower [check box as applicable]:

| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [X] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Home Improvement Rider | [ ] Revocable Trust Rider | |
| [X] Other(s) [specify] | | |

1-4 Family Rider

(J)  "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions
will be called "Applicable Law."

(K)  "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are
imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be
called "Community Association Dues, Fees, and Assessments."

(L)  "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or
similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape
so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an
Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant),
automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(M)  "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N)  "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than Insurance Proceeds paid under the coverage described in Section 5) for:
(i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known
as "Condemnation."

(O)  "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.

(P) "**Periodic Payment.**" The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "**RESPA.**" "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to Lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

    (A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

    (B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

    (C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

    (A) to exercise any or all of those rights, including, but nor limited to, the right to foreclose and sell the Property; and

    (B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

    (A) The Property which is located at         60 TRUMAN AVE
                                                      [Street]

         YONKERS                , New York      10703
     [City, Town or Village]                                 [Zip Code]

This Property is in         WESTCHESTER         County. It has the following legal description:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Real property tax identification number:

    (B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

    (C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

NEW YORK MORTGAGE—Single Family—Secondary Lien
THE COMPLIANCE SOURCE, INC. ©
ITEM 8497L3 (0304)—MERS,                      *(Page 3 of 13 pages)*                      To Order Call: 1-800-968-5776

(D)   All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E)   All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F)   All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G)   All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1.    **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and, if allowable under Applicable Law, any prepayment, late charges and other amounts due under the Note.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument, or keeping all of my other promises and agreements secured by this Security Instrument.

2.    **Application of Borrower's Payments and Insurance Proceeds.** Payments are only considered received when they reach the Lender's address specified in the Note, or a different address specified in Section 14 of this Security Instrument. Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due. Any remaining amounts will be applied as follows:

First, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

NEW YORK MORTGAGE—*Single Family—Secondary Lien*
THE COMPLIANCE SOURCE, INC. ©
ITEM 8497L4 (0304)—MERS }                          *(Page 4 of 13 pages)*                          To Order Call: 1-800-968-5775

Voluntary prepayments will be applied as follows: First, to any prepayment charges; if allowable under Applicable Law, and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3.    Monthly Payments For Taxes And Insurance.**

(a)    **Borrower's Obligations.** Subject to Applicable Law, I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1)    The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2)    The leasehold payments or ground rents on the Property (if any);

(3)    The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4)    The premium for Mortgage Insurance (if any);

(5)    The amount I may be required to pay Lender instead of the payment of the premium for Mortgage Insurance (if any); and

(6)    If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 8 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 8 of this Security Instrument to repay Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b)    **Lender's Obligations.** Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow

NEW YORK MORTGAGE—Single Family—Secondary Lien
THE COMPLIANCE SOURCE, INC. ©
ITEM 8497LS (0304)—MERS

(Page 5 of 13 pages)

To Order Call 1-800-968-5775

Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c)    Adjustments to the Escrow Funds. Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 26.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender. I will not be required to make payments of Funds to Lender to the extent I already make such payments under a prior mortgage.

4.    Borrower's Obligation to Pay Charges, Assessments And Claims. I will perform all of my obligations under any agreement with a lien which has priority over this Security Instrument. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property other than a lien in my application or in any title report Lender obtained that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5.    Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services unless prohibited by Applicable Law; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification unless prohibited by Applicable Law. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument and will bear interest at the interest rate set forth in the Note from the date of disbursement until it is paid in full.

Subject to applicable law, all of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The

form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   6.   **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**
   (a)   **Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If Insurance or Condemnation (as described in the definition of Miscellaneous Proceeds) Proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those Proceeds for such purposes. Lender may pay for the repairs and restoration out of Proceeds in a single payment or in a series of progress payments as the work is completed. If the Insurance or Condemnation Proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.
   (b)   **Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.
   7.   **Borrower's Loan Application.** If, during the application process for the Loan, I, or any person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.
   8.   **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture, proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a lien which has or may become superior to

this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any lien against the Property that has been or may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 8, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 8.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 8. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

9.    **Mortgage Insurance.** A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance.

10.    **Agreements About Miscellaneous Proceeds; Forfeiture.** The Miscellaneous Proceeds of any award a claim for damages, direct or consequential, in connection with any condemnation or other taking of the property, or part thereof, or for conveyance in lieu of condemnation are hereby assigned and shall be paid to Lender, subject to the terms of any agreement with a lien which has priority over this Security Instrument.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 18 of this Security Instrument, even if Lender has required Immediate Payment in Full. The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**11. Continuation of Borrower's Obligations And of Lender's Rights.**

(a) **Borrower's Obligations.** Lender may allow me, or a person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 21 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**12. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 17 of this Security Instrument, any person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 19.

**13. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, as allowed under Applicable Law. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**14. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any

NEW YORK MORTGAGE—Single Family—Secondary Lien
THE COMPLIANCE SOURCE, INC. ©
ITEM 6497L9 (0304)—MERS]                    (Page 9 of 13 pages)                    www.compliancesource.com 1-800-958-5775

requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

16.   Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

17.   Agreements about Lender's Rights If the Property Is Sold or Transferred. Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 14 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

18.   Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Security Instrument stopped; or (c) after a judgment has been entered enforcing this Security Instrument, but before sale of the Property. In order to have this right, I will meet the following conditions:

(a)   I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b)   I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c)   I pay all of Lender's reasonable expenses in enforcing this Security Instrument, as allowed under Applicable Law; and

(d)   I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 18, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 17 of this Security Instrument.

19.   Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If Applicable Law requires that I be given written notice of any change of the Loan Servicer, the notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 14 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to

be reasonable for purposes of this section. The notice of acceleration and opportunity to cure given to me under Section 21 and the notice of the demand for payment in full given to me under Section 21 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19. All rights under this section are subject to Applicable Law.

   **20.  Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 20. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 20 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

   I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this section do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos?containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

   I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat or release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

   Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.


NON-UNIFORM COVENANTS

   I also promise and agree with Lender as follows:
   **21.  Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 17 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 21 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

   **If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.**

   **Lender may require immediate payment in full under this Section 21 only if all of the following conditions are met:**
   **(a)  I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;**
   **(b)  Lender sends to me, in the manner described in Section 14 of this Security Instrument, a notice that states:**
      **(1)  The promise or agreement that I failed to keep or the default that has occurred;**
      **(2)  The action that I must take to correct that default;**

(3)   A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4)   That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5)   That if I meet the conditions stated in Section 18 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6)   That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c)   I do not correct the default stated in the notice from Lender by the date stated in that notice.

22.   **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

23.   **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 23.

24.   **Borrower's Statement Regarding the Property [check box as applicable].**

[X]   This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ]   This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ]   This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 13 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)        _____ (Seal)
KAREN BELTRAN                        -Borrower                                               -Borrower


_____ (Seal)        _____ (Seal)
                                     -Borrower                                               -Borrower


_____ (Seal)        _____ (Seal)
                                     -Borrower                                               -Borrower


Witness:                                              Witness:

_____                _____


State of New York                              )
                                               ) SS.:
County of _Westchester_                        )

On the _30_ day of _March_ in the year _2006_, before me, the undersigned, a Notary Public in and for said State, personally appeared  KAREN BELTRAN


personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
                                     Notary Public

GWEN GROTTA
Notary Public, State of New York
No. 5001039
Qualified in Westchester County
Commission Expires August 31, 2006

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this        30th      day of                March 2006             ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to FIRST FRANKLIN  A DIVISION OF NAT. CITY BANK OF IN

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

60 TRUMAN AVE
YONKERS, NY  10703

[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In
addition to the Property described in Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description, and
shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for the
purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire
prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath
tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals,
washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and
curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which,
including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property
described in the Security Instrument (or the leasehold estate if the Security Instrument is on a
leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree
to or make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and
requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without Lender's
prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in
writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall
assign to Lender all leases of the Property and all security deposits made in connection with leases

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3170 1/01

ITEM 1790L1 (0011)                    (Page 1 of 3 pages)                    GREATLAND ■
                                                                To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

**MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**        **Form 3170 1/01**

ITEM 1790L2 (0011)            {Page 2 of 3 pages)            GREATLAND ■
                                                      To Order Call: 1-800-530-9393 □Fax: 616-791-1131

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 through 3 of this 1-4 Family Rider.

_____ (Seal)
KAREN BELTRAN                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3170 1/01

ITEM 1790L3 (0011)          *(Page 3 of 3 pages)*          GREATLAND ■
                                                          x: 616-791-1131

National City®

**BALLOON RIDER TO MORTGAGE, DEED OF TRUST OR SECURITY DEED**
**FIRST FRANKLIN**

Date: March 30, 2006

**1. BORROWER(S):** KAREN BELTRAN

**Property Address:** 60 TRUMAN AVE
YONKERS, NY 10703

**2. DEFINED TERMS; RIDER A PART OF THE SECURITY INSTRUMENT.** "Rider" means this Balloon Rider to Mortgage, Deed of Trust or Security Deed which is attached to, made a part of and amends and supplements the Mortgage, Deed of Trust or Security Deed ("Security Instrument") which Borrower(s) gave to FIRST FRANKLIN  A DIVISION OF NAT.    CITY BANK OF IN           ("the Lender") and which is dated the same date as this Rider. The Security Instrument secures the Note and Security Agreement ("Note") and covers the property described therein located at the address set forth above. The term "the Lender" includes Lender's successors and assigns. In the event there are any conflicts between this Rider and the Security Instrument or the Note, the provisions of the Rider will control.

**3. BALLOON NOTE.** The final payment due under the Note is larger than the previous monthly payments. The final payment includes a substantial payment of principal. The Note is commonly called a "balloon note."

**4. BALLOON NOTE AGREEMENT.** Borrower(s) understand and agree as follows:

THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE SET FORTH IN THE SECURITY INSTRUMENT.  THE BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN, UNPAID INTEREST AND OTHER SUMS THEN DUE.

**5. SIGNATURES.** BORROWER HAS READ AND AGREES TO ALL PROVISIONS OF THIS RIDER.

© 2004 National City Corporation

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Balloon Rider.

KAREN BELTRAN                              X _____
Type or print name                                              Signature

_____   X _____
Type or print name                                              Signature

_____   X _____
Type or print name                                              Signature

_____   X _____
Type or print name                                              Signature

_____   X _____
Type or print name                                              Signature

_____   X _____
Type or print name                                              Signature

© 2004 National City Corporation

## WESTCHESTER COUNTY CLERK RECORDING SHEET

110 Dr. Martin Luther King, Jr. Boulevard        White Plains, NY 10601

----- THIS FORM MUST BE COMPLETED AND SUBMITTED WITH EACH DOCUMENT -----

This page is part of the instrument. The County Clerk will rely on the information
provided on this page for purposes of indexing this document.
To the best of the submitter's knowledge the information contained on this
Recording Sheet is consistent with the information contained in the attached document.

**SUBMITTER INFORMATION:**    Title Number: S4 180669

Company: STATEWIDE ABSTRACT CORP.

Address: 202 MAMARONECK AVENUE

City: WHITE PLAINS    State: NY    Zip: 10601    Telephone: (914)683-5900

Attention: RECORDING DEPARTMENT

| Document type: mortgage | # of pages: 19 | Mortgage Amount: On page 2 of document | Dwelling Type: For Mortgage Only |
|---|---|---|---|
| | | $ 112,000 | On page 13 of document |
| 1st party name(s) (i.e. grantor/mortgagor) On page 1 of document | Business Entity | OR | [X] 1 to 2 family |
| Karen Beldman | [ ] | Consideration/Conveyance Amt: | [ ] 1 to 6 family |
| | [ ] | $ | [ ] Not 1 to 6 family |
| | [ ] | | |
| | [ ] | Check if document: | |
| | [ ] | [ ] RP-5217 - [ ] 575 [ ] 5165 | |
| | | [ ] TP-584 - Type of property conveyed (1 through 8) | |
| 2nd party name(s) (i.e. grantee/mortgagee) On page 1 of document | Business Entity | [ ] TP-584.1    [ ] IT-2663 | |
| 1st Franklin a division of Nat'l. | [ ] | **TAXES PAID:** | Reference # Or Check # |
| | [ ] | Amount | |
| | [ ] | Mortgage Tax $ 2026.00 | |
| | [ ] | Transfer Tax $ | |
| | [ ] | Mansion Tax $ | |
| | | RECORDING FEES PAID: | Reference # or Check # |
| | | Amount | |
| Tax designation (Section, Block & Lot) On page 1 of document | | $ | |
| 3/3378/56 | | **MORTGAGE TAX AFFIDAVITS SUBMITTED:** | |
| | | [ ] 252 [ ] 255 [ ] 280 Other | |
| City(ies) or Town(s) for Property Description On page 4 of document | | [ ] 253 [ ] 260 [ ] 339-ee | |
| Yonkers | | Cross Reference(s): On page ___ of document | |

| Property Description -- If required, check the one contained within the document. | Record and Return To: |
|---|---|
| [X] Metes & bounds    On page 4 of document | 1st Franklin |
| [ ] Lot number on map filed in the Office of the County Clerk | c/o Sequria Casserms |
| [ ] Refer to deed recorded in the Office of the County Clerk | 1935 Bellisimonal Way |
| | Idaho Falls, ID 83182 |

## Westchester County Recording & Endorsement Page

### Submitter Information

| | |
|---|---|
| Name: Partners For Payment Relief LLC | Phone: 435-374-0133 |
| Address 1: 3748 West Chester Pike Suite 103 | Fax: 435-765-9925 |
| Address 2: | Email: tyler.wort@cscglobal.com |
| City/State/Zip: Newton Square PA 19073 | Reference for Submitter: 9003350-Partners For Payment Relief L |

### Document Details

| | |
|---|---|
| Control Number: 542803301 | Document Type: Assignment (ASS) |
| Package ID: 20141007001580901000 | Document Page Count: 2 — Total Page Count: 4 |

### Parties

☑ Additional Parties on Continuation page

| 1st PARTY | 2nd PARTY |
|---|---|
| 1: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC - Other | 1: PARTNERS FOR PAYMENT RELIEF DE III, LLC - Other |
| 2: FIRST FRANKLIN - Other | 2: |

### Property

☐ Additional Properties on Continuation page

Street Address: 60 TRUMAN AVE — Tax Designation: 3-3378-56

City/Town: YONKERS — Village:

### Cross- References

☐ Additional Cross-Refs on Continuation page

1: 461520350    2:    3:    4:

### Supporting Documents

| Recording Fees | | Mortgage Taxes | |
|---|---|---|---|
| Statutory Recording Fee: | $40.00 | Document Date: | |
| Page Fee: | $15.00 | Mortgage Amount: | |
| Cross-Reference Fee: | $0.50 | | |
| Mortgage Affidavit Filing Fee: | $0.00 | Basic: | $0.00 |
| RP-5217 Filing Fee: | $0.00 | Westchester: | $0.00 |
| TP-584 Filing Fee: | $0.00 | Additional: | $0.00 |
| | | MTA: | $0.00 |
| Total Recording Fees Paid: | $55.50 | Special: | $0.00 |
| **Transfer Taxes** | | Yonkers: | $0.00 |
| Consideration: | $0.00 | Total Mortgage Tax: | $0.00 |
| Transfer Tax: | $0.00 | | |
| Mansion Tax: | $0.00 | Dwelling Type: | Exempt: ☐ |
| Transfer Tax Number: | | Serial #: | |

RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded:    10/07/2014 at 03:37 PM
Control Number:    542803301
Witness my hand and official seal

Timothy C Idoni
Westchester County Clerk

### Record and Return To

☐ Pick-up at County Clerk's office

Partners For Payment Relief LLC
3748 West Chester Pike Suite 103

Newton Square, PA 19073

17-08233-shl   Doc 10-10   Filed 06/22/18   Entered 06/22/18 17:39:27   Exhibit H
17-22419-rdd   Claim 1-1 Part 4 06/05/17   Pg 38 of 47
Pg 38 of 47

.4

The Office of the Westchester County Clerk. This page is part of this instrument, the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

## Westchester County Recording & Endorsement Page

### Document Details

| | |
|---|---|
| Control Number: 542803301 | Document Type: **Assignment (ASS)** |
| Package ID: 20141007001580010 | Document Page Count: 2    Total Page Count: 4 |

| 1st PARTY Addendum | 2nd PARTY Addendum |
|---|---|
| NAT CITY BANK OF IN | Other |

_____  Space above for Recorder's use  _____

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for First Franklin, a Division of Nat. City Bank of IN, its successors and assigns whose address is 1901 E. Voorhees Street, Suite C, Danville, IL 61834, does by these presents hereby convey, grant, bargain, sell, assign, transfer, and over and deliver unto Partners for Payment Relief DE II, LLC, whose address is 3748 West Chester Pike, Suite 102, Newtown Square, PA 19073, the following described mortgage (the "Mortgage"), together with the certain promissory note(s) described therein (the "Note(s)") together with all rights therein and thereto, all liens created or secured thereby, and any and all interest due thereon.

Mortgage is recorded in the State of NY, County of Westchester.

| | |
|---|---|
| Instrument#: | 461525388 |
| Date of Recording: | 06/09/2006 |
| Date of Mortgage: | 01/13/2006 |
| Original Grantor(s): | KAREN HALLMAN |
| Original Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR FIRST FRANKLIN, A DIVISION OF NAT. CITY BANK OF IN, ITS SUCCESSORS AND ASSIGNS |
| Original Loan Amount: | $217,000.00 |
| Property Address: | 65 TRENOR AVE, YONKERS, NY 10703 |
| Section/Block/Lot: | 3 / 3570 / 50 |
| Legal Description: | see attached Exhibit 'A' |
| MIN: | |

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

IN WITNESS WHEREOF, the undersigned entity by all due authority has caused this instrument to be executed by its duly authorized officer(s), representative(s) or Attorney-in-Fact this 6th day of Oct , 2014.

Institution: Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for First Franklin, a Division of Nat. City Bank of IN, its successors and assigns

By: _____
   John Sweeney, Asst. Secretary, Mortgage Electronic Registration Systems, Inc.

Witness: _____          Witness: _____
         Kristin Douglas                            Susan M. Wright

Commonwealth of Pennsylvania    )
                                ) ss.:
County of Delaware              )

On the 6th day of October in the year 2014 before me, the undersigned, personally appeared John Sweeney , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Witness my hand and official seal on the date hereinabove set forth.

_____
Notary Public  Chelsea Kimmel
My Commission Expires: 8/22/17

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHELSEA KIMMEL, Notary Public
Newtown Twp., Delaware County
My Commission Expires August 22, 2017

## EXHIBIT 'A': LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land, situate, lying and being in the City of Yonkers, County of Westchester and State of New York, being shown and designated upon the Official Tax Map of the City of Yonkers as Section 3, Block 3378, Lot 56.

BEING ALSO DESCRIBED as Lots 564, 563 and 562 in Block 15A on a certain map entitled, "Map of Nepera Park, Yonkers, N.Y.", dated July 1891, surveyed by M.K. Couzens, C.E., revised and redrawn by John Brunton, C.E., May 4th, 1899 and filed in the Office of the Clerk of the County of Westchester, Division of Land Records, on August 18, 1908, as Map No. 1819, said lots when taken together are more particularly bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of Truman Avenue with the southerly side of King Street;

RUNNING THENCE easterly along the southerly side of King Street on a course forming a right angle with Truman Avenue, 100.00 feet to a point and the dividing line between Lot Nos. 562, 563, 564 and Lot Nos. 6, 7, 8 as shown on the aforementioned map;

RUNNING THENCE southerly along the last mentioned dividing line, 75.00 feet to a point and the dividing line between Lots Nos. 564 and 565 as shown on the aforementioned map;

RUNNING THENCE westerly along the last mentioned dividing line 100.00 feet to a point and the easterly side of Truman Avenue;

RUNNING THENCE northerly along the easterly side of Truman Avenue, 75.00 feet to the point or place of BEGINNING.

The Office of the Westchester County Clerk, This page is part of the instrument, the County Clerk will
rely on the information provided on this page for purposes of indexing this instrument. To the best of
submitters knowledge, the information contained on this Recording and Endorsement Cover Page is
consistent with the information contained on the attached document.

*553483039ASS0024*

## Westchester County Recording & Endorsement Page

### Submitter Information

| | |
|---|---|
| Name: RedVision | Phone: 718-797-5444 |
| Address 1: 16 court street suite 714 | Fax: 718-766-1155 |
| Address 2: | Email: kavita.jurnkant@Redvision.com |
| City/State/Zip: brooklyn NY 11241 | Reference for Submitter: PARTNERS ABSTRACT (200134-W) |

### Document Details

| | | |
|---|---|---|
| Control Number: 553483039 | Document Type: Assignment (ASS) | |
| Package ID: 20151214000025001004 | Document Page Count: 3 | Total Page Count: 4 |

### Parties
☐ Additional Parties on Continuation page

| 1st PARTY | 2nd PARTY |
|---|---|
| 1: PARTNERS FOR PAYMENT RELIEF DEII LLC    - Other | 1: CROSBY CAPITAL USA LLC    - Other |
| 2: | 2: |

### Property
☐ Additional Properties on Continuation page

| | |
|---|---|
| Street Address: 60 TRUMAN AVE | Tax Designation: 3-3378-56 |
| City/Town: YONKERS | Village: |

### Cross- References
☐ Additional Cross-Refs on Continuation page

| 1: 491520359 | 2: | 3: | 4: |
|---|---|---|---|

### Supporting Documents

### Recording Fees

| | |
|---|---|
| Statutory Recording Fee: | $40.00 |
| Page Fee: | $20.00 |
| Cross-Reference Fee: | $0.50 |
| Mortgage Affidavit Filing Fee: | $0.00 |
| RP-5217 Filing Fee: | $0.00 |
| TP-584 Filing Fee: | $0.00 |
| Total Recording Fees Paid: | $60.50 |

### Transfer Taxes

| | |
|---|---|
| Consideration: | $0.00 |
| Transfer Tax: | $0.00 |
| Mansion Tax: | $0.00 |
| Transfer Tax Number: | |

### Mortgage Taxes

Document Date:

Mortgage Amount:

| | |
|---|---|
| Basic: | $0.00 |
| Westchester: | $0.00 |
| Additional: | $0.00 |
| MTA: | $0.00 |
| Special: | $0.00 |
| Yonkers: | $0.00 |
| Total Mortgage Tax: | $0.00 |

Dwelling Type:                Exempt: ☐

Serial #:

### Record and Return To
☐ Pick-up at County Clerk's office

RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded:        02/05/2016 at 09:57 AM
Control Number:   553483039
Witness my hand and official seal

Timothy C. Idoni
Westchester County Clerk

DEII, LLC
3748 WEST CHESTER PIKE, SUITE 103

NEWTOWN SQUARE, PA 19073

Date: 01/26/2009  Time: 11:50
DOC TYPE:I-1  P W078*  $210.00CK
DOC TYPE:L-1  P W078*  $35.00CK
DOC TYPE:L-3  P W078*  $1.50CK

TOTAL FEES:   $246.50

Prepared By and Return To:
Partners for Payment Relief DEII, LLC
3748 West Chester Pike, Suite 103
Newtown Square, PA 19073

Space above for Recorder's use

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Partners For Payment Relief DEII, LLC whose address is 3748 West Chester Pike, Suite 103, Newtown Square, PA 19073, does by these presents hereby convey, grant, bargain, sell, assign, transfer, set over and deliver unto Crosby Capital USA LLC whose address is 460 Seventh Avenue, New York, NY 10001, the following described mortgage (the "Mortgage"), together with the certain promissory note(s) described therein (the "Notes(s)") together with all rights therein and thereto, all liens created or secured thereby, and any and all interest due thereon.
Mortgage is recorded in the State of NY, County of Westchester.

Instrument/Book/Page:      461570358
Date of Recordation:       06/09/2006
Date of Mortgage:          03/30/2006
Original Mortgagor(s):     KAREN BELTRAN
Original Mortgagee:        MORTGAGE ELECTRONIC REGISTRATION SYSTEMS
                           INC. (MERS) AS NOMINEE FOR FIRST FRANKLIN A
                           DIVISION OF NAT CITY BANK OF IN,
                           ITS SUCCESSORS AND ASSIGNS
Original Loan Amount:      $117,000.00
Property Address:          60 TRUMAN AVE, YONKERS, NY 10703
Section/Block/Lot:         3 / 3370 / 56
Legal Description:         See attached Exhibit 'A'

This Assignment is not subjected to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

IN WITNESS WHEREOF, the undersigned entity by all due authority has caused this instrument to be executed by its duly authorized officer(s), representatives(s) or Attorney-in-Fact this 27 day of October, 2015.

Institution: Partners for Payment Relief DEII, LLC

By: _____
Title: Vice-President
JOHN SWEENEY

_____                    _____
Witness                                Witness
CHELSEA PROCOPIO                       ANDREA SMITH

Commonwealth of: Pennsylvania          County of: Delaware

On this date of October 27, 2015, before me, the undersigned authority, a Notary Public commissioned, qualified and acting within and for the aforementioned State and County, personally appeared the within named John Sweeney, known to me (or identified to me on the basis of satisfactory evidence) that they are the Vice-President and are duly authorized to execute the foregoing instrument for and in the name and on behalf of said corporation and that said corporation executed the same, and further stated and acknowledged they that had so signed, executed and delivered said instrument for the consideration, uses and purposes therein mentioned and set forth.

Witness my hand and official seal on the date hereinabove set forth.

_____
Michele
Notary Public Horneman My Commission Expires: 3/4/19

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MICHELE HORNEMAN, Notary Public
Marple Township, Delaware County
My Commission Expires March 4, 2019

ALL that certain plot, piece or parcel of land, situate, lying and being in the City of Yonkers, County of Westchester and State of New York, being shown and designated upon the Official Tax Map of the City of Yonkers as Section 3, Block J378, Lot 56.

BEING ALSO DESCRIBED as Lots 564, 563 and 562 in Block 15A on a certain map entitled, "Map of Nepera Park, Yonkers, N.Y.", dated July 1891, surveyed by M.K. Couzens, C.E., revised and redrawn by John Drunton, C.E., May 4th, 1899 and filed in the Office of the Clerk of the County of Westchester, Division of Land Records, on August 18, 1908, as Map No. 1819, said lots when taken together are more particularly bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of Truman Avenue with the southerly side of King Street;

RUNNING THENCE easterly along the southerly side of King Street on a course forming a right angle with Truman Avenue, 100.00 feet to a point and the dividing line between Lot Nos. 562, 563, 564 and Lot Nos. 6,7,8 as shown on the aforementioned map;

RUNNING THENCE southerly along the last mentioned dividing line, 75.00 feet to a point and the dividing line between Lots Nos. 564 and 565 as shown on the aforementioned map;

RUNNING THENCE westerly along the last mentioned dividing line 100.00 feet to a point and the easterly side of Truman Avenue;

RUNNING THENCE northerly along the easterly side of Truman Avenue, 75.00 feet to the point or place of BEGINNING.

County: Westchester
Section: 3
Block: 3378
Lot: 56

Assignment of Mortgage without Covenant-
Individual or Corporation (Single Sheet)

**CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-
THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.**

KNOW THAT

Crosby Capital USA LLC a corporation organized and existing under the laws of the United
States of America whose principal place of business is 469 Seventh Avenue, New York, NY
10001, assignor,

In consideration of TEN AND 00/100 DOLLARS ($10.00) and other good and valuable
consideration, paid by

Gustavia Home, LLC, a corporation whose principal place of business is 104 SE 8ᵗʰ Avenue,
Fort Lauderdale, FL 33301, assignee,

hereby assigns unto the assignee, a certain Mortgage dated March 30, 2006, made by Karen
Beltran to Mortgage Electronic Registration Systems, Inc., as nominee for First Franklin a
Division of Nat. City Bank of IN its successors and assigns in the principal sum of $117,000.00
and recorded on June 9, 2006 in Control Number 461520358 in the Office of the Clerk, County
of Westchester covering premises known as 60 Truman Avenue, Yonkers, NY 10703 which
mortgage was assigned to Partners for Payment Relief DE II, LLC by assignment dated October
7, 2014 and recorded on October 7, 2014 in Control Number 542803301. Thereafter, said
mortgage was assigned to Crosby Capital USA LLC by assignment of mortgage dated October
27, 2015 which assignment has been previously sent for recording.

Pursuant to Section 321 of the Real Property Law, said mortgage has not been further assigned.

This assignment is not subject to the requirements of Section 275 of the Real Property Law
because it is an assignment within the secondary mortgage market.

TOGETHER with the bond or note or obligation described in said mortgage, and the moneys due
and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the
assignee and to the successors, legal representatives and assigns of the assignee forever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees"
whenever the sense of this instrument so requires.

DATED:

Crosby Capital USA LLC

By:

Title:

(General Acknowledgment for documents executed and notarized **outside of New York State, except California**)

ACKNOWLEDGMENT

State of ____ N Y ____
County of ____ N Y ____ )ss.

On the 3 day of Feb in the year 2016 before me, the undersigned, personally appeared Yunel Devico , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of ____ NY ____, State of ____ NY ____.

Notary Signature

ROBIN FUNK
Notary Public • State of New York
NO. 01FU6164229
Qualified in New York County
My Commission Expires 2-31-2016

NY NY

Assignment of Mortgage
Without Covenant

SECTION: 3

BLOCK: 3378

TITLE NO.

LOT: 56

Crnsby Capital USA LLC

COUNTY OR TOWN: Westchester
PROPERTY ADDRESS:
60 Truman Avenue
TO                                        Yonkers, NY 10703

Gustavia Home, LLC

RECORD AND RETURN TO:

Gustavia Home, LLC
C/O
The Margolin & Weinreb Law Group, LLP
165 Eileen Way, Suite 101
Syosset, New York 11791